# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN GARY DENHAM, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GLOBAL DISTRIBUTION SERVICES, INC. d/b/a AMERICA'S ALLIANCE d/b/a AMERICA'S CHOICE GARAGE DOOR SERVICE; GLOBAL DEVELOPMENT STRATEGIES, INC.; LEAD DRIVER, LLC; EMPLOYEE RETENTION SERVICES, LLC; NEIGHBORHOOD GARAGE DOOR SERVICES, INC.; PETER JAMES STEPHENS, JR.; JASON ROMSZEWSKI; and KYOUNG LEE,<br><br>    Defendants. | Case No. 3:18-cv-01495-LAB-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT [Dkt. 100]** |

Plaintiffs filed an Unopposed Motion for Approval of the Fair Labor Standards Act ("FLSA") settlement in this case, (Dkt. 100), seeking approval of the parties' settlement in this collective action, as well as service awards, attorneys' fees, and costs to be drawn from the settlement fund. While the

settlement is fair, Plaintiffs and Collective Action Counsel Shellist Lazars Slobin LLP ("Collective Action Counsel") fail to fully justify the amounts they seek as service awards, attorneys' fees, and costs. Accordingly, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## DISCUSSION

### I. Fairness of the Settlement

FLSA claims can be settled only with the supervision and approval of the United States Department of Labor or a federal district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319-L-MDD, 2014 WL 3924609, at *1 n.1 (S.D. Cal. Aug. 11, 2014) (noting that "district courts in the Ninth Circuit have followed *Lynn's Food Stores*" and collecting cases). A settlement warrants approval if it "reflect[s] a reasonable compromise of disputed issues." *Lynn's Food Stores*, 679 F.2d at 1354.

The first step in this analysis is determining whether there is a bona fide dispute over the defendant's liability to the plaintiffs under the FLSA. *See id.* Plaintiffs point to several disputed factual and legal questions: (1) whether the statute of limitations has run as to some Plaintiffs, including whether the longer limitations period applicable to "willful" violations applies; (2) whether all Plaintiffs worked overtime; (3) whether Plaintiffs' compensation was sufficiently clear of the federal minimum wage that any overtime worked didn't reduce their effective compensation below that wage; and (4) whether the California Plaintiffs released their claims via class settlement in a related case. (Dkt. 100-1 at 11, 20-21; Dkt. 100-3 ¶ 7); *see also* 29 U.S.C. § 255(a) (extending limitations period for willful violations). Each of these appears to be genuinely disputed.

The Court next considers whether the compromise is reasonable. Plaintiffs estimate their total damages at approximately $728,238, not

accounting for any statutory award of fees and costs. (Dkt. 100-1 at 12.) The gross settlement amount of $325,000 represents just under 45% of that amount. Discovery proceeded sufficiently to inform each of the opt-in plaintiffs of their likelihood of success at trial, and the Court finds that a settlement amounting to 45% of Plaintiffs' damages is reasonable and provides meaningful relief given the risks inherent in continued litigation over the issues disputed in this action. The Court finds, too, that the scope of Plaintiffs' release of claims is appropriately limited to claims that were asserted in the Complaint or reasonably could have arisen out of the same facts alleged in the Complaint.

## II.   Attorneys' Fees and Costs

Counsel nominally seeks a fee award of 34% of the total settlement amount, or $110,500, plus costs of $90,000. However, $60,000 of the purported costs are, in fact, attorneys' fees incurred by a second firm in a related action. Accounting for this misclassification, the requested fee amounts to 52.5% of the common fund, with costs proposed to consume another 9.2%. The Court finds the separate state court litigation not reasonably necessary to protect the plaintiffs' interests in this action, and so it declines to award any fees or costs associated with the state action. But even after removing those fees and costs, the remaining requested amounts are unreasonable.

### A.   Applicable Standard

"The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Where "parties . . . negotiate and agree to the value of a common fund . . . and provide that, subsequently, class counsel will apply to the court for an award from the fund, . . . common fund fee principles" apply. *Staton*, 327 F.3d at 972. Because the parties have so agreed here, the Court applies those principles. (Dkt. 100-2 ¶¶ 3.1, 3.4, 3.5.)

In evaluating a request for fees and costs from a common fund, the Court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011), citing *Staton*, 327 F.3d at 963-64. The Court has discretion to determine reasonableness in one of two ways: the lodestar method, which multiplies a reasonable hourly rate by a reasonable number of hours spent on the litigation, and the percentage-of-the-recovery method. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011). On the other hand, costs are reasonable where they pay for something that "can reasonably be considered a benefit to the [plaintiffs]." *See Staton*, 327 F.3d at 975.

### B. Fees and Costs for the State Court Litigation Aren't Recoverable in this Action

While this action was underway, a state-court class action led by the former lead plaintiff in this litigation, Sean Delph, reached a settlement. According to Collective Action Counsel, that settlement would have released the California claims brought in this action. (Dkt. 102 at 6.) Collective Action Counsel, on behalf of the California plaintiffs in this case, intervened first to object to the settlement and then, when the trial court approved the settlement, to appeal that approval. Counsel hired a second law firm, Robins Kaplan, to represent the California plaintiffs in the appeal—that firm billed nearly $60,000 for its attorneys' time (after significant discounts).[1] The state litigation costs amounted to another $9,335.39. (*See* Dkt. 110-1.)

There's no indication that a class-wide release of California state law claims would have harmed any Plaintiff here. To the extent Plaintiffs would

---

[1] Counsel characterizes these fees as costs—they are not. Attorneys' fees remain fees whether the attorneys charging them are the firm's principals, its employees, or its contractors.

– 4 –

have been members of that releasing class, they could have opted out—they all opted into this action, after all—or the settlement would compensate them for their released claims. *See Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 820-21 (2014) (noting class members' rights to object or opt out of class settlement, "render[ing] the scope of the release irrelevant as to [them]"). And the Court won't usurp the role of California courts by presuming that the settlement in the state case didn't adequately compensate class members for their released claims. *See Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008) (California court can't approve class action settlement "without independently satisfying itself that the consideration . . . is reasonable").

There's no showing that counsel's expenditures in challenging the class settlement benefitted the Plaintiffs, so the Court can't find those fees and costs reasonably incurred in prosecution of this action. They won't be included in any award here.[2]

C.   Attorneys' Fees

Counsel proposes to calculate its fee as 34% of the common fund. Despite the Court's invitation, Collective Action Counsel didn't provide a lodestar calculation for comparison. (Dkt. 102 at 3; Dkt. 101 at 2 ("Plaintiffs may include [with briefing of the reasonableness of their requested fees] . . . their lodestar calculation and any supporting documents necessary to establish the reasonableness of that calculation.").) Proportionality to the common fund is the only available measure of reasonableness available. (Dkt. 102 at 3); *see In re Bluetooth*, 654 F.3d at 942-43; *see also In re WPPSS*, 19 F.3d at 1297-98

---

[2] Including these expenses would also undermine the fairness of the settlement to opt-in Plaintiffs who don't have any California claims. Those Plaintiffs didn't have any interest in the state litigation. (*See* Dkt. 102-3 ¶ 5.) Counsel couldn't fairly charge them for fees and costs expended defending other Plaintiffs' claims. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (discussing conflicts of interest between class representatives and class members).

(district court reasonably exercised discretion by choosing calculation method that counsel itself relied on).

In evaluating that proportionality, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942. Counsel identifies several purportedly "special" circumstances: first, the quality of the result; second, counsel's fee agreements "consistent with" a 40% fee; and third, the need for "significant litigation . . . on three fronts" as a result of a competing class action proceeding in state court. (Dkt. 102-3 ¶¶ 4-7.)

As to the first, counsel's percentage-wise fee means that it already shares the benefit of a larger recovery. And while a truly "exceptional result" warrants divergence from the benchmark, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002), the recovery here doesn't rise to that level. The gross settlement amount may be 45% of Plaintiffs' alleged damages, as counsel contends. But that ratio isn't particularly meaningful—it compares damages, fees and costs in the numerator to a damages-only denominator. A proper comparison omits fees and costs entirely because a prevailing FLSA plaintiff is entitled to recover fees and costs in addition to damages. Plaintiffs' net recovery, reduced by benchmark attorneys' fees of $81,250, the $6,765.36 in costs attributable to this case, and settlement administration costs of $8,250, would be $228,734.64, or 31.4% of the claimed $728,238 in damages. Neither this number nor the 45% gross recovery that counsel relies on is an exceptional result justifying reducing the recovery further with an exceptional fee award.[3]

Counsel's 40% contingency fee agreement with Plaintiffs can't justify a

---

[3] Applying counsel's full request for fees and costs to the net recovery makes that recovery even less exceptional: counsel proposes to leave Plaintiffs with only $130,000, or 17.8% of their estimated damages.

departure from the benchmark, either. When awarding fees from a common fund, the Court must follow the common law standards applicable to such awards, rather than any agreement adopting a different standard. *Staton*, 327 F.3d at 969. Counsel, then, had little reason to expect that its fee agreement would control its share of any common fund settlement. And courts have recognized that they need not defer to a lead plaintiff's fee agreement in the absence of evidence that the agreement reflects negotiation of a market-value rate—a lead plaintiff's involvement may be "confined to an endorsement of lead counsel's proposed fee." *In re HPL Technologies, Inc. Securities Litig.*, 366 F. Supp. 2d 912, 916 (N.D. Cal. 2005); *see also, e.g., In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011) (approving special master's "place[ment] [of] little weight" on contingent fee agreements with named plaintiffs, who "are usually cat's paws of the class lawyers"); *Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1189 (E.D. Cal. 2018) (rejecting application to common fund of contingency fee agreement that would have awarded unreasonably high fees). There's no evidence that any Plaintiff attempted to negotiate a lower percentage fee. And it's unlikely that any Plaintiff had a meaningful ability to negotiate: The only person who might have, initial plaintiff Sean Delph, isn't a party to the litigation anymore. (*See* Dkt. 3-1 (consent forms identifying Delph as the individual who initiated this action with Shellist Lazarz Slobin as counsel); Dkt. 14 (notice of dismissal of Delph's claims.) A non-party's approval of Collective Action Counsel's proposed fee and other Plaintiffs' subsequent acceptance of that fee in joining the action can't make the fee fair and they can't justify a departure from the benchmark rate.

Lacking any special circumstances, the Court applies the 25% benchmark rate to the $325,000 common fund, resulting in fees of $81,250. The Court finds this amount reasonable considering the degree of success and the benefit to the Plaintiffs relative to their damages estimate of $728,238, and so it awards

$81,250 in fees, to be paid to Collective Action Counsel out of the common fund.

D. Costs

Counsel also seeks reimbursement for $83,200.51 in purported costs. (Dkt. 110 at 1.)[4] But nearly three-quarters of this sum aren't costs at all. Instead, $60,000 of the purported costs are more attorneys' fees, incurred by another law firm retained for representation in the state court litigation. (*See* Dkt. 110-1 (listing "appeal expense" items owed to outside law firm of $60,000). Another $8,435.15 are costs from that other litigation. (*See id.*) Only the remaining $14,765.36—$8,000 in settlement administration costs and $6,765.36 in other costs—are attributable to this action. (*See id.*; Dkt. 110-4.)

As discussed above, costs or fees relating to the state litigation can't reasonably be deemed a benefit to the Plaintiffs, so they can't be awarded. With respect to the remaining costs, the Court has a duty to ensure that any costs awarded from the common fund are reasonable. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of *reasonable* litigation expenses from that fund. To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in [common fund cases]." *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1001-02 (N.D. Cal. 2017) (internal marks and citations omitted).

The Court directed Plaintiffs' counsel to provide documentation of "all costs relating to this action . . . [that] are of the kind typically billed to clients." Dkt. 107. The Court has reviewed the supplemental briefing and exhibits counsel submitted in response. It finds counsel's costs reasonable with one exception.

---

[4] Counsel originally sought $90,000 in costs but reduced its request in subsequent briefing. (*Compare* Dkt. 110 at 1 *with* Dkt. 100-1 at 4.)

Shellist Lazarz Slobin asks Plaintiffs to pay $633.43 for attorney Ricardo Prieto's food, baggage, and travel around the time of the Early Neutral Evaluation and Case Management Conference on September 11, 2019.[5] Prieto spent $501.43 of this amount on four meals—two afternoon meals for $77.29 and $87.27 and two evening meals for $166.84 and $170.03. (Dkt. 110-2 at 16–17.) These are extravagant prices to charge clients for a single attorney's meals. The IRS's 2019 per diem rate for meals and incidental expenses was $60 per day—the Court adopts that number as reasonable and will award $120 for Prieto's two-day stay in San Diego. (*See* IRS Notice 2019-55.)[6]

Subtracting the $381.43 difference from the other costs, which are reasonable, the Court awards $14,383.93 in costs, including $8,000 in settlement administration costs.

### III. Service Awards

The parties' settlement agreement permits Plaintiffs Denham, Cisneros, Patterson to apply for awards of up to $10,000 for Denham and $5,000 each for Cisneros and Patterson. (Dkt. 100-2 ¶ 3.3.) These three seek the maximum amounts contemplated by the settlement, arguing that such awards are "consistent with the amount of awards given in comparable cases."[7] But they offer little to show that each of the three can be compared fairly to anyone receiving an award in those purportedly comparable cases.

In class actions like those the Plaintiffs cite, "named plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d

---

[5] The docket indicates that only one attorney appeared for Plaintiffs at that conference and counsel's submissions don't indicate that anyone joined Prieto for these meals. (*See* Dkt. 47.)

[6] The Court takes judicial notice of this document. While San Diego has occasionally been included as a "high-cost locality" with a higher rate, it wasn't designated high-cost in September 2019.

[7] While the Motion doesn't specify these numbers, it refers to "[t]he Service Awards contemplated by the Settlement Agreement." (Dkt. 100-1 at 16.)

938, 977 (9th Cir. 2003). Other "designated class members who are not named plaintiffs" are ineligible, at least in part because granting special treatment to a substantial proportion of the class increases the likelihood of inequitable treatment among class members. *Id.*

Were this case a class action and Cisneros and Patterson class members, then, they wouldn't be eligible for any service award. But even in a collective action, where the distinction between the lead plaintiff and opt-in plaintiffs isn't as sharp, award disparities based on factors other than the value of plaintiffs' claims can threaten the fairness of the settlement. *Id.* at 976. An enhanced award for participation in the litigation is warranted only if the plaintiff seeking it was "essential to the litigation," rather than merely "helpful to it." *Id.* But Cisneros and Patterson initially provided only the statement of counsel that the two "contributed [work and services] to the case." (Dkt. 100-1 at 16.) And when ordered to provide evidence of their efforts, (Dkt. 105 at 2), their counsel provided broad and non-evidentiary descriptions of various types of assistance provided by "the Named and opt-in Plaintiffs"—the latter presumably referring to Cisneros and Patterson only—specifically identifying only a single declaration from each. (Dkt. 106 at 3-5.) Cisneros's and Patterson's eight-paragraph declarations do little to justify increasing those plaintiffs' awards at the expense of other opt-in plaintiffs, four of whom provided similar declarations but seek no service award. (Dkt. 54-2, Exs. A-2–A-7.) On this evidence, Cisneros and Patterson were helpful at best—not essential. Requiring the plaintiffs as a group to compensate two of their number for indeterminate "work and services" would undermine the settlement's fairness, so the Court grants no service awards to Cisneros and Patterson. *See Staton*, 327 F.2d at 978.

Lead Plaintiff Denham, on the other hand, is presumptively "essential to the litigation" and therefore "eligible for [a] reasonable incentive payment[]." *Id.* at 976-77. He fails to demonstrate, though, that his requested $10,000 award is

reasonable. The Court "must evaluate [a lead plaintiff's] award[] individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Id.* (internal marks and citation omitted). Courts typically apply "intense scrutiny" requiring "exceptional justification" to awards in the vicinity of 1% of the settlement fund, but nevertheless treat $5,000 incentive awards for named plaintiffs as "presumptively reasonable." *Chavez v. Lumber Liquidators, Inc.*, Case No. CV-09-4812 SC, 2015 WL 2174168, at *4 (N.D. Cal. May 8, 2015); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015).

The $10,000 that Denham requests represents over three times the 1% threshold requiring exceptional justification. He argues, though, that this award is within a normal range: "[I]ncentive awards typically range from $2,000 to $10,000." (Dkt. 100-1 at 23-24 (quoting *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015).) But the authority he cites for this proposition aren't comparable. They involve settlements ranging in value from 3 to 138 times the value of this settlement. *See Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-cv-04960-VC, 2015 WL 12976106, at *3 (N.D. Cal. 2015) ($10 million); *Vedachalam v. Tata Consultancy Servs.*, No. 06 Civ. 0963, 2013 WL 3929129, at *2 (N.D. Cal. July 18, 2013) ($29 million); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *3 (N.D. Cal. June 30, 2011) ($12.5 million); *Ross v. U.S. Bank Nat'l Ass'n*, No. 07 Civ. 2951, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) ($3.5 million); *Glass v. UBS Fin. Servs., Inc.*, No. 06 Civ. 4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) ($45 million); *Bellinghausen*, 306 F.R.D. at 266-67 ($1 million).

While the plaintiff in the smallest of these cases, *Bellinghausen*, received

a $15,000 incentive award, the court approved that award based on a declaration evincing the plaintiff's extensive efforts and actual lost job opportunities in connection with the litigation. 306 F.R.D. at 267-68. Denham didn't provide such compelling evidence. (*See* Dkt. 105; Dkt. 106.) His counsel argues that Denham undertook a reputational risk in bringing the suit, with a "very real possibility of retaliation by Defendants or future potential employers," (Dkt. 106 at 4), but again point only to Denham's declaration as evidence of his efforts. These aren't enough to warrant an extraordinary award.

Nevertheless, courts treat a $5,000 payment to the named plaintiff as "presumptively reasonable," *see Bellinghausen*, 306 F.R.D. at 267, so the Court awards Denham that amount as incentive and compensation for his services.

### IV. Continuing Jurisdiction

The parties have filed a form "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge" that consents "to have a United States magistrate judge conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings." By its terms and under 28 U.S.C. § 636(c), this consent doesn't require the Court to refer *all* proceedings to a magistrate judge, so the Court reads it as giving effect to the parties' August 6, 2021 Notice of Intent stating that "the parties agree that Magistrate Judge . . . Mitchell D. Dembin . . . will retain jurisdiction to resolve all disputes arising out of the settlement agreement[], including interpretation and enforcement of the terms of the agreement." (Dkt. 113; *see also* Dkt. 111 (order notifying plaintiffs that Court won't retain jurisdiction, but that they may instead consent to magistrate judge jurisdiction).) The Court therefore orders that Magistrate Judge Mitchell D. Dembin, or another assigned Magistrate Judge sitting in this District in the event of Judge Dembin's unavailability, will retain jurisdiction over all disputes arising out of the settlement agreement, including interpretation and enforcement of the terms of the agreement.

# CONCLUSION

**IT IS HEREBY ORDERED:**

1. The Court finds that the proposed Settlement, as set forth in the Settlement Agreement executed by the Parties, (Ex. 1 to Plaintiffs' Unopposed Motion for Approval of FLSA Settlement), is a reasonable compromise of a *bona fide* dispute.

2. The Court finds that the uncertainty and delay of litigation support the adequacy of the proposed Settlement Amount.

3. The Settlement Agreement is **APPROVED**.

4. Magistrate Judge Mitchell D. Dembin will retain continuing jurisdiction over all disputes arising out of the settlement agreement, including interpretation and enforcement of the terms of the agreement.

5. The Court awards Collective Action Counsel $81,250.00 in attorneys' fees, plus $14,383.93 for costs and expenses, subject to the terms of the Settlement Agreement.

6. The Court awards Plaintiff Ryan Gary Denham a Service Award in the amount of $5,000.00 subject to the terms of the Settlement Agreement.

7. The Court enters final judgment in this case. This action is **DISMISSED WITH PREJUDICE**, with each party to bear their own attorneys' fees and costs, except as set forth in the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: August 31, 2021

*Larry A. Burns*
Hon. Larry A. Burns
United States District Judge